**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **LOUIS BENJAMIN GALENSKY,** )<br>**Individually;** )<br> . )<br>**V.** )<br> )<br>**DEPUTY DALTON MORDECAI, individually,** )<br>**DEPUTY BRUCE FERRIS, Individually,** )<br>**OFFICER HARDAGE, Individually,** )<br>**OFFICER MONTELONGO, Individually.** )<br>**OFFICER NUABA, Individually,** )<br>**OFFICER J. PRICE, Individually,** )<br>**HARRIS COUNTY, a Governmental Entity,** )<br>**And DOES 1-10, Inclusive.** )<br>        ***Defendants.*** )<br>_____ ) | **CASE NO.**<br>**COMPLAINT FOR**<br>**VIOLATION OF CIVIL RIGHTS**<br>**(42 U.S.C. § 1983)**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff  LOUIS BENJAMIN GALENSKY,  for his Complaint against the above-named  Defendants, respectfully states and alleges as follows:

## **JURISDICTION**

1.     Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights, secured to Plaintiff under the Constitution of the United States, including the Fourth, Ninth, and Fourteenth Amendments of the U.S. Constitution.

2.      Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(3) and (a)(4), which provide for original jurisdiction in this Court of all suits brought

pursuant to 42 U.S.C. Section 1983.  Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States.

3.     Venue is properly established in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. Section 1391, in that the events and circumstances herein alleged occurred in the City of Houston, Harris County, Texas, and all of the Defendants were either employed in or are residents of Harris County in the State of Texas where jurisdiction is the United States District Court for the Southern District of Texas, Houston Division in Houston, Texas.

## **PARTIES**

4.  At all times relevant to the facts and circumstances in the Complaint, Plaintiff LOUIS BENJAMIN GALENSKY, (hereinafter referred to as "BEN") was a resident of Woodland Hills, California.

5.  At all times mentioned herein, Defendant DEPUTY DALTON MORDECAI (hereinafter referred to as "DALTON")  was an individual residing, on information and belief, in Harris County, Texas and was an officer, agent, and or employee of the Harris County Sheriff Department, Houston, Texas whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the wrongful arrest of BEN.

6.  At all times mentioned herein, Defendant DEPUTY BRUCE FERRIS, (hereinafter

referred to as "BRUCE")  was an individual residing, on information  and belief, in Harris County, Texas and was an officer, agent, and or employee of the Harris County Sheriff Department, Houston, Texas whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the Application of Excessive Force and a beating on BEN while BRUCE was the Bailiff in the Court of Judge Kelley Andrews, Harris County Criminal Court of Law No. 6.

7.  At all times mentioned herein, Defendant OFFICER HARDAGE (hereinafter referred to as "HARDAGE")  was an individual residing, on information and belief,  in Harris County, Texas and was a Correctional Officer at the Harris County Jail whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the application of Excessive force and a beating of BEN at the Harris County Jail.

8.  At all times mentioned herein, Defendant OFFICER MONTELONGO (hereinafter referred to as "MONTELONGO")  was an individual residing, on information and belief,  in Harris County, Texas and was a Correctional Officer at the Harris County Jail whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the application of Excessive force and a beating of BEN at the Harris County Jail.

9.  At all times mentioned herein, Defendant OFFICER NUABA (hereinafter referred to as "NUABA")  was an individual residing, on information and belief,

in Harris County, Texas and was a Correctional Officer at the Harris County Jail whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the application of Excessive force and a beating of BEN at the Harris County Jail.

10. At all times mentioned herein, Defendant OFFICER J. PRICE (hereinafter referred to as "PRICE")  was an individual residing, on information and belief, in Harris County, Texas and was a Correctional Officer at the Harris County Jail whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the application of Excessive force and a beating of BEN at the Harris County Jail.

11. At all times relevant to the facts and circumstances in the Complaint, Defendant HARRIS COUNTY (hereinafter referred to as "HARRIS") is a governmental entity, duly organized and existing under the laws of the State of Texas. At all times herein, the Harris County Sheriff Department (hereinafter referred to as "SHERIFF") was the law enforcement arm of Harris County and under the administrative and operational control of Harris County. The HARRIS COUNTY JAIL (hereinafter referred to as "JAIL") was under the administrative and operational control of Harris County Sheriff Department.

12. Plaintiff is informed and believes, and on such basis alleges, that each of the named Defendants was and is the agent, employee, principal, employer and/or co-conspirator of each of the remaining Defendants and/or vice versa.  In addition, Plaintiff

is informed and believes, and on such basis alleges, that the Defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named Defendants conspired with, and/or sided and/or abetted and/or jointly collaborated with each of the remaining Defendants and identified persons in committing the acts herein alleged.

13. Plaintiff is informed and believes, and on such basis alleges, that each of the above named Defendants and settling co-conspirators were acting under the color of state law in committing the acts herein alleged, and that in doing the things herein alleged Defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other.

14. Plaintiff is informed and believes and on such basis alleges that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their Co-Defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants and identified persons agreed upon, approved, ratified, and/or conspired together to commit all of the acts and/or omissions alleged in this Complaint.

## **FACTUAL ALLEGATIONS**

15. In or about August 16, 2021, BEN entered the corporate offices of ATLAS DESIGN &

REMODELING, INC. (FORMERLY ABMA, INC.) at 6422 Highway 6 N, Houston,

Texas 77084 to obtain his sales commission. While at the corporate office to pick up his

check an employee refused to pay him. Immediately, afterward BEN was attacked by

two (2) employees after he video taped the refusal to pay him his paycheck. He was

injured but was able to call the 911. Deputy MORDACAI showed up and BEN was able

to show him the entire video with his cell phone. BEN was rushed to the hospital. The

video showed that BEN did not start the incident. **However, shortly afterward Deputy**

**MORDACAI charged BEN with misdemeanor assault and bodily injury even**

**though BEN was the only person injured. BEN also showed the video on his cell**

**phone to Deputy MORDACAI, yet after conversations with employees of ABMA.**

**Inc. still charged BEN without any video evidence to the contrary and without any**

**probable cause. Thus, the true aggressors were not charged. The case against BEN**

**was later dismissed because the VIDEO showed that BEN should not have been**

**arrested.**

16.  Because Deputy **MORDACAI** cited **BEN** without probable cause, **BEN**

appeared for court on August 27, 2021 in County Court No. 6, **Judge Kelley Andrews**

Prior to appearing for Court, **BEN** called the Court Clerk, **Shavaris Kennedy** to

confirm the court date who rudely hung up on **BEN**. **BEN** called back and **BRUCE**

answered the telephone and when asked the same question hung up on **BEN before threatening to arrest him. When speaking to the Judge concerning the misdemeanor charge, Ben attempted to mention the actions of the Clerk Kennedy and bailiff BRUCE and tried to tell his side of the incident and was quickly cut-off by Judge Andrews. Judge Andrews apparently did not want to hear BEN and had him arrested by BRUCE without cause . Deputy Farris took Ben to the room in the Courtroom where defendants in jail meet their attorneys. Upon entering the room, when Farris closed the door, Deputy FARRIS applied excessive force by beating up BEN severely without any probable cause.** Apparently JUDGE ANDREWS later observed **BEN** was beaten up but did not say or do nothing. At all times **BEN did not offer any type of resistance to what he was told to do.**

17. An ambulance was called and **BEN** was removed from the courthouse by ambulance to a hospital where Ben was not even provided adequate treatment for his injuries. He was semi-conscious even though severely beaten. BEN was never told what hospital he was in. Immediately after a brief stay at the hospital he was transported to the Harris County Jail.

18. At the jail he was put in solitary confinement by the officers, (in the early evening) who continually initially punched **BEN in the face, knocked him on the ground, and kicked him** applying excessive force by beating him up, namely

HARDAGE, MONTELONGO, NUABA, and PRICE referred to herein as the "CORRECTIONAL OFFICERS". He was never allowed a phone call.

19.The CORRECTIONAL OFFICERS stated "This is TEXAS and YOU are Jewish" giving **BEN** a **racist reason** for the excessive force and beating. At no time did **BEN** disobey the instructions or resist the CORRECTIONAL OFFICERS. **BEN** was provided no food or water for the entire evening. The next day upon a shift change he was allowed to enter the general population where he was allowed a phone call. He placed a phone call and was released on his own recognizance. He retained counsel. **The case was dismissed by the Court on August 10, 2022 because of insufficient evidence after the District Attorney reviewed the video that was in BEN'S cell phone.**

20.   As a result of the excessive force and beatings, plaintiff sustained substantial and permanent injuries to his back, neck, and spinal cord. and still receives treatment today including severe emotional distress based on this incident.

### FIRST CAUSE OF ACTION

**(42 U.S.C.  Section 1983)**
**(4th and 14th Amendment)**
**(Against all the named individual defendants}**
**DOES 1-10, inclusive)**

21. Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 20 of this Complaint.

22.  In doing the acts complained of herein, **DEPUTY DALTON MORDECAI, DEPUTY BRUCE FERRIS, CORRECTIONAL OFFICERS  HARDAGE, MONTELONGO, NUABA, AND PRICE, violated BEN o**f certain constitutionally protected rights including, but not limited to as follows:

a.  **Officer Mordacai** for arresting **BEN** without probable cause after reviewing the video from BEN's Cell Phone which was the same video which resulted in the charges being dropped; **DEPUTY BRUCE FERRIS** for the unlawful arrest, seizeure, and the application of excessive force by beating up **BEN** for no probable cause and for no resistance from **BEN;** the CORRECTIONAL OFFICERS for the application of excessive force to **BEN and deprivation of food and medical care to BEN even though BEN offered no resistance.**

b.  The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourth and Fourteenth amendments to the United States Constitution;

c.  The right to equal protection of the laws, as guaranteed by the Fourteenth amendment to the United States Constitution;

d.  The right not to have excessive force against her in violation of her 14th amendment rights.

e.  The right to be free from interferences with the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution.

f.  Cruel and unusual punishment in violation of 9th Amendment rights.

WHEREFORE, plaintiff prays for relief as hereinafter set forth below.

## SECOND CAUSE OF ACTION

### (42 U.S.C.  Section 1983)

### (Against defendant HARRIS COUNTY, TEXAS)
### (Monell Related Claims)

23.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 22 of this Complaint, except for any and all allegations of intentional,

24.   Defendant Harris County, Texas, including through its Sheriff's Department, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Individual Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of the rights of Plaintiff.

25.   Defendant Harris County, Texas, including through its entity the Harris County Sheriff's Department, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff  at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed under the United States Constitution, including those under the Fourth, Ninth, and Fourteenth Amendments, to include without limitation, the protection of the right to be free from unlawful search and seizures and excessive force applied by its deputies.

26.   Defendant Harris County also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of its agents, officers, employees and those acting under them, including within its Sheriff's Department so as to protect these Constitutional Rights; and to refrain from acting with deliberate indifference to the Constitutional Rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

27.   Moreover, based on the duties charged to Defendant Harris County, Texas and its policymaking officials, knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of citizens with whom their Sheriff's Department regularly came into contact. Each of the following policies, practices, and customs were the direct cause and moving force of Plaintiffs' injuries and deaths.

28.   Sheriff  Gonzalez  was  the  policymaker  for  Harris  County  with respect

to the jail when **BEN** suffered his injuries due to the jail's unconstitutional policies, customs, and practices.

29. Harris County has encouraged this policy by repeatedly determining that the actions of jailers which constitute an unnecessary use of force were justified and within the guidelines of their policies, procedures, and the law.

30. It was highly predictable that Harris County employees would follow

these ongoing policies and practices. The known and obvious consequences of Harris County's policies and practices identified above is that detainees would suffer significant injuries and death. The DOJ, TCJS, and even the Sheriff as explained above have all provided notice of these policies and the likely consequences of those policies causing constitutional violations.

31. Harris County's rampant constitutional failures go back for the better part of two decades. When looking back at the Jail's most recent history, the records and information available to the public creates a trail of constitutional violations that has steadily grown year over year. The information available to the public only shows the tips of the icebergs that make up this trail, but the tips of the icebergs are more than sufficient to draw the conclusion that Defendant has ongoing policies, practices, procedures, and customs that are the moving force behind the violation of each of BEN's constitutional rights leading to their injuries and deaths.

32. Harris County attempts to hide what happens behind the doors of the Jail, but a few public records are available to give insight into the ongoing pervasive nature of the deplorable conditions behind those doors. These records include an investigation by the Department of Justice, numerous investigations and non-compliance reports by the Texas Commission on Jail

Standards, multiple admissions by the Harris County Sheriffs of the "culture" within the Jail, statistics gathered and reported by the Harris County Sheriff showing the violent nature of the Jail, and numerous incidents involving sim**ilar facts and injuries suffered by BEN.**

33. One main area that the DOJ found as unconstitutional was "significant and often glaring operational deficiencies" in security matters including lacking: "(1) a minimally adequate system for deterring excessive use of force, and (2) an adequate plan for managing a large and sometimes violent detainee population."In addressing this area, tellingly, the DOJ started their analysis with: "We have serious concerns about the use of force at the Jail."

34. "Indeed, we found significant number of incidents where staff used inappropriate force techniques, often without subsequent documented investigation or correction by supervisors.". The staff would fail to properly investigate the use of force when used with inaccurate documentation and relying exclusively on officer statements.  "Jail data regarding use of force levels cannot be considered reliable."  "We believe that the incidents noted during our review may only reflect part of what is really occurring within the facility."

35.  Under well-established Texas law, the Harris County Sheriff is the  final policymaker for the Harris County Jail for the purpose of holding

the County liable under § 1983. The Sheriff position regardless of the individual holding that position is the policymaker. In November 2016, Sheriff Ed Gonzalez was elected as the Sheriff of Harris County with specific responsibilities over the Harris County Jail. Sheriff Gonzalez was the policymaker when Plaintiff BEN suffered their injuries and died in the Harris County Jail.

36.     At the time of the underlying events, the regularly established customs and practices of the Harris County Sheriff Department that were followed, adhered to, complied with, and carried out by Defendants, were the moving force, that is, the actual, direct, and proximate cause of the violations of the Plaintiff's rights as follows but are not limited to: (a) the unlawful detention of citizens and (b) Excessive Use of Force; (c) The unwritten policy of acting with deliberate indifference to the rights of citizens whose rights were violated by its Sheriff's department failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the Fourth, Ninth, and Fourteenth Amendments. (d) the consistent failure by Harris County to investigate violations of constitutional rights by its sergeants and deputy sheriffs, and consistent failure to discipline its sergeants and

deputy sheriffs and their supervisors involved in constitutional violations of citizens and (e ) hiring officers without a full investigation.

37.     Nevertheless, Harris County has made a knowing and conscious decision to refrain from promulgating policies to prevent such misconduct, and has consistently and knowingly failed to provide any training to members of its Sheriff's Department with respect to Plaintiff's complaint.

38.     It is obvious that the Court Deputy and Correctional Officers defendants used excessive force on BEN for no apparent reason causing him extensive injury.

39.  Plaintiff has also incurred, and will continue to incur, attorney's fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

## DAMAGES

40. As the direct and proximate result of the individual Defendants' wrongful conduct, including arrest without probable cause and excessive force, plaintiff was injured and damaged, as set forth herein.

41. As a direct and proximate result of Defendant officers' wrongful conduct, Plaintiff suffered the following injuries and damages:

a.     Violation of his constitutional rights under the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of her person;

b.      Loss of physical liberty;

c.      Physical injuries, pain and suffering, emotional trauma and suffering, and medical expenses;

d.      Violations of the following clearly established and well-settled federal constitutional rights which include (1) freedom from unreasonable search and seizure of their persons under the Fourth Amendment to the United States Constitution; and, (2) right to equal protection under the Fourteenth Amendment to the United States Constitution;

e.      The conduct of named Defendants' Sheriff deputies was malicious, wanton and oppressive.  Plaintiff is therefore entitled to an award of punitive damages against said defendant sheriff's deputies;

f.      Harris County is also responsible for the lack of policies and procedures by its Sheriff's Department when it allows its sergeants and deputies to work second jobs knowing they continually violate the constitutional rights of its citizens.

g.      Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law.  Plaintiff is therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of her civil rights.

## **PRAYER**

WHEREFORE, plaintiff prays for judgment against the Defendants, jointly and severally as follows:

1.     For general damages in the sum of $1,000,000.00;

2.     For special damages according to proof;

3.     For punitive damages against the individual named Defendant sheriff's deputies, according to proof;

4.     For reasonable attorney's fees pursuant to 42 U.S.C.  Sections 1983 and 1988;

5.     For costs of suit herein incurred; and

6.     For such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


Dated:  August 11, 2023

s/ Edward A. Rose, Jr.
By Edward A. Rose, Jr. Attorney at Law
Edward A. Rose, Jr., Attorney at Law, PC
Attorney-in-Charge
State of Texas Bar No. 24081127
 Southern District of Texas Bar No. 1645585
3027 Marina Bay Drive  Suite 208
League City, Texas 77573
Phone: 713-581-6029
Fax: 832-201-9960
edrose@edroseattorneycpa.com

COMPLAINT

**s/ Kent Motamedi**
By: Kent Motamedi, Attorney at Law
Motamedi Law, PLLC
SBN: 24107233
952 Echo Lane, Suite 320
Houston, Texas 77024
Phone: 832-582-5867
kent@motamedilaw.com
*Attorneys for Plaintiffs*

COMPLAINT